Our last case of the day, Kirin, v. Magnolia Medical Technologies. Good morning, Your Honor. This is John Hengartner on behalf of Kirin, Incorporated, the appellant in this case. And I would like to reserve the floor. Mr. Hengartner, we can't see you. Oh, there you are. There we go. Thank you. Sorry about that. Yes, we'd like to, this is John Hengartner on behalf of Kirin, Incorporated, the appellant. And I intend to reserve four minutes for rebuttal. And we'll watch the clock. Okay, thank you. We have three issues on appeal here. And I'm going to follow those in the order that they were briefed, starting with the denial of Kirin's motion for summary judgment on Magnolia's counterclaim for false advertising and unfair competition. So Magnolia bears the trial burden on these counterclaims. To shift the burden on summary judgment, Kirin's obligation under Rule 56 was to point out to the district court that there was an absence of evidence to support Magnolia's claims. Before you go on, you may or may not be right on whether the district court erred in denying the motion for summary judgment. How do we get to review that? Doesn't all of our case law say the denial of a motion for summary judgment is not separately appealable? It just gets incorporated into the final judgment. And in this case, it seems to me you have to persuade us that the counterclaims were inappropriately dismissed for us to even worry about them, because there's no final judgment on these counterclaims. Your Honor, so looking at the court's authority for that position, the Supreme Court in Ortiz indeed indicated that a denial of summary judgment is not an appealable issue after trial. And in fact, that's consistent with the Ninth Circuit. Or after judgment. In other words, if you could come up now and say if a judgment was entered against you on those counterclaims, you could come up and say that was wrong. Shouldn't have been a judgment on those counterclaims, summary or otherwise. But those counterclaims no longer exist because they've been dismissed, putting aside your argument that appropriately dismissed. So I have no idea how we have the ability to review the district court's refusal to grant summary judgment on it. Well, Your Honor, I looked at the closest case analogous is out of the D.C. Circuit, the LaFond case, which we talk about in our brief. And in the LaFond case, the district court had denied summary judgment. And in fact, what happened following the denial of summary judgment was the dismissal of the claims. Now, it was akin to a Rule 41 dismissal, 41A2 voluntary dismissal, although procedurally it happened slightly differently. The D.C. Circuit explained that the dismissal of prejudice was essentially a 41A2 voluntary dismissal because it was initially requested by LaFond, who had his motion denied. And then that dismissal was actually filed by the District of Columbia. So what happened is the district court, the D.C. Circuit found that this was a final appealable order that LaFond summary judgment. The important difference there was that the guy who wanted to appeal it dismissed his counterclaims so he could set up an appeal, so there'd be a final judgment. Here, the other side, they're not seeking anything against you anymore on these counterclaims. So why isn't this issue simply moved? Your Honor, well, if we follow through that logic, we have a problem here because the current has been denied any opportunity to appeal what is admittedly legal error. I mean, there's been no. You're going to have that chance in Delaware. Your Honor, this goes, I think, to the issues of the underlying dismissal, which under even an abuse of discretion standard was contrary to the factors that the court is supposed to assume for the moment. And then I know where you're going with this. And you can ask me why the transfer was was wrong. But assume for the moment that the rule 41 transfer was not erroneous, then would you agree that that transfer mooted out the counterclaims? I'm not sure I exactly understand the question, but I would not agree that if we have now a dismissal without prejudice, if Magnolia elects to reinstate those claims in another district, then Kieran will start from scratch. It will have to start over with a bare record. That doesn't seem to be I. I'm confused about that because you've stipulated that all the discovery in this case can be used in Delaware. Well, Your Honor, they were not able to bring the case in Delaware. The court declined their motion to amend in the Delaware case. So this case will not become part of the patent case that's ongoing in Delaware. That that has been decided by the district. Is that part of the record? Yes, it is, Your Honor. I believe so. I'll have to find the the specific citation to the record. But the Delaware court ruled against Magnolia, declined to allow the amendment because that case is also very far along and it is a patent case. And so this will not become these claims will not become part of the Delaware case. If they are to come back to life, they will have to finish your answer. I'm sorry that they will have to spring to life from a new complaint yet to be filed by Magnolia. And the case will start from scratch. And you'll have race judicata. You'll have race judicata arguments arising from that, won't you? Well, Your Honor, we will certainly raise whatever law of the case we can in terms of those issues. But but the procedurally, this case would start from a new complaint and would be subject to discovery and would be subject to the entire process again. And so presumably there would be an opportunity to seek summary judgment again in that possibly to be filed future case. Has Magnolia filed that case? No, Your Honor, they have not. They attempted to file a case. I understand they attempted to amend in Delaware, but have they actually filed anything against your client? No, not yet, Your Honor. Is there a statute of limitations that's running? Your Honor, there is. But the time frame on that, I'd have to go back and look at the dates of the actual claims. But I don't know what that that I'm putting aside the case law for a second. I'm trying to approach this in in a common sense fashion. Magnolia made counterclaims against your client, correct? Correct. Those claims sought relief against your client. Correct. The district court refused to grant summary judgment again. District court made a ruling on a summary judgment on that. Thereafter, Magnolia said, the heck with it. We're not we don't want to pursue those counterclaims against your client anymore. And you would like them reinstated? And then what would happen? Would there be a trial on those counterclaims? So that Magnolia might possibly recover against your client? I just don't understand what we're fighting about here. Your Honor, the key piece missing of your description is dismissal with or without prejudice. We offered to stipulate to a dismissal with Magnolia with prejudice, but they refused. They insisted on seeking a dismissal without prejudice. That's why I asked this question at the beginning. Your real complaint is that the district court dismissed these counterclaims without prejudice. Your real complaint isn't that the district court granted summary judgment because that judgment goes away. There is no judgment against you. There's nothing that hurts your client from these counterclaims. So that's really your argument, isn't it? Well, that's right, Your Honor. If this was a dismissal with prejudice, we would not be here today discussing these issues. The problem that we have is that... What is it you're worried about? We're worried about them refiling this case. Let me walk through the analysis. Before you walk through it, let's assume they refile it. Your motion for summary judgment is teed up. You've got all the discovery, you've got everything else, and you will bring it to a judge who will decide it on its merits. If you lose, you can appeal. If the judge says there are fact issues, you'll have to go to trial and defend against them. So I'm not sure how, other than delay in eventually resolving these, you've been prejudiced. Well, certainly there's delay, and there's cost, and there's the fact that we have what we believe is a valid summary judgment motion that was denied because of an error of law. So we would then be forced in this new case... What is the error of law? The error of law is that the district court applied an improper burden-shifting requirement on Curran. The case law is extremely clear. Under Rule 56, Curran's burden on summary judgment was simply to point out, through argument, to the district court the absence of evidence to support key elements of Magnolia's claim. But the judge below ruled, you lost on this issue because the judge below concluded that you failed to meet your burden of production as the moving party of establishing the absence of a material fact. That's right. And so once that happens, why was Magnolia required to do anything? Well, Your Honor, the problem is that the judge made that finding based on an improper standard. The district court expressly required Curran to come forward with affirmative evidence establishing that Magnolia lacked evidence. And the Ninth Circuit has been extraordinarily clear, differentiating between an affirmative obligation to come forward with evidence that the non-movement lacks evidence, and simply pointing out, through legal argument, that there is an absence of evidence. That is the standard in the Ninth Circuit. But the court said that you cited nothing in the record. I'm sorry, Your Honor? The court said you cited nothing in the record. Your Honor, we presented argument, legal argument, and we did cite specific instances where Magnolia had failed. Isn't it factual error by the court as opposed to legal error? No, Your Honor, because the court clearly applied the wrong standard. It required an affirmative showing by Curran. It didn't simply say you failed to make an argument. Counsel, if I may, you've spent now close to 12 out of your 15 minutes on the first issue in this case. Yes, of course, Your Honor. I would definitely like the court to pay attention to all three issues. We think there are strong grounds for all three. But with respect to the dismissal without prejudice, the court had three factors to apply. And as we've laid out in some detail in our briefing, all three of those factors fall against it. So the problem that Curran faces is spending two years of litigation and hundreds of thousands of dollars defending claims all the way up to the day that our pretrial filings were due. Counsel, I tried to direct you to argue some of the other issues. I think you've adequately briefed that, and we've spent a lot of time on that first issue. Is there any other issue you wish to argue about today? Your Honor, those were the first two issues, and I'd like to reserve the balance of my time for rebuttal. All right. Thank you, Counsel. Mr. Penikowski. Thank you, Your Honor. Good morning, Your Honors. Stanley Penikowski for the Appellee Magnolia Medical Technologies. Your Honors, regarding the Delaware case, at Curran's opening brief, page 34, footnote 10, Curran noted that Magnolia's motion for leave to amend in Delaware was denied. This happened after the district court's decisions that are on appeal in this case. Curran provides the docket numbers of the relevant filings in Delaware. Those are not specifically part of the record in this case, but to the extent that they were judicially noticeable, this court could find the details of what subsequently happened in Delaware from those documents. Mr. Penikowski, I know that your colleague passed up the chance to talk about it, but what most interested me in this case was whether or not the summary judgment in favor of your client was correct. Can you address that for me? Yes, Your Honors. The summary judgment on Curran's claims against Magnolia was correct on multiple independent grounds for each of the five challenge statements. And unless Your Honor steers me otherwise, I'll first address several of the grounds that apply to all five of the challenge statements. First of all, this court in Southland Side held that an essential element of a false advertising claim under the Lanham Act is materiality. And this court defined materiality as likely to influence the purchasing decision. And in this that any of these specific statements, either singly or collectively, had any influence on any customer's purchase decision. There was no consumer survey, no customer declaration, no documents that provided evidence of any kind of customer reaction, no anecdotal or statistical evidence of any kind showing that even if the statements were false, that they actually were likely to influence any of these sophisticated medical professionals purchasing decisions. Now, was there a motion for preliminary injunction in this case? Your Honor, I do not believe that there was a motion for a preliminary injunction. I mean, I say this not wanting to suggest that it plays any role in the outcome. My experience in Lanham Act cases, both as counsel and otherwise, was that there was always a motion for a preliminary injunction and the sort of proof of the eventual damage. Consumer confusion might be less at that stage than it would be at demerits. But this is a summary judgment motion on demerits, right? That is correct, Your Honor. And given the relatively advanced stage of the case at which summary judgment was granted on Curran's claims against Magnolia, there was plenty of time. There was full discovery afforded. There were expert witnesses on Curran's side. And Curran had every opportunity and incentive, because this court said materiality is required in Southland side, in order to show that these challenge statements actually influenced or were likely to influence any purchaser's decision. It's no mystery who these purchasers are. And a consumer survey is always an available tactic. This court said in Southland side that reactions of consumers are usually tested through a consumer survey. But here we simply have nothing. And likewise, Your Honors, on the issue of causation, which is likewise a ground for affirmance that applies to all five claims, we have no evidence whatsoever from Curran that could possibly establish causation here. Certainly nothing that meets the sufficiency of the evidence standard for a reasonable jury to find for that. And this causation standard has been articulated in a number of this court's cases and also by the Supreme Court in Lexmark, where the court said that a plaintiff suing under Section 1125A ordinarily must show economic or reputational injury flowing directly from the deception brought by the defendant's advertising. And that occurs when deception of consumers causes them to withhold trade from the plaintiff. So there are two key words from the Supreme Court, Your Honor. First, must actually three keywords, Your Honor. First, must show. There must be a demonstration, not attorney argument. We need evidence here that the injury alleged is flowing directly from the challenge statements. And the third keyword, Your Honors, is causes. There must be a causal connection between the injury and those statements. There can't be mere correlation. There can't be mere guesswork or speculation. You must show a causal connection. And the Supreme Court cemented this again at page 140 of the Lexmark decision when it said that there must be evidence of this causation. Not an assumption, not a presumption, and again, not speculation. Here, Curran did not provide evidence that would satisfy Lexmark or any of this court's pre or post-Lexmark cases. It points to its CEO's conclusory statements in his deposition. That's at volume four of the excerpts of record, page 675. And all that is, Your Honors, is about 17 lines of deposition testimony where Curran's CEO says in vague, conclusory, and speculative terms, things like, Magnolia's marketing poisoned the well, or that they weren't playing fair, and that somehow slows down the process for everyone in the market. And when you look at those statements, Your Honors, that there are multiple deficiencies in them, including that they're not tied to any particular Magnolia representations, much less the ones that are being challenged as false or misleading on appeal here. And also, it's simply too vague and too conclusory to satisfy this notion that you need sufficient evidence to go to a jury on causation of harm under Lexmark, South and Sod, and other cases. And then the only other form of evidence that Curran generated here was testimony from its expert. And the relevant expert deposition excerpt from Dr. Kennedy is found at volume five of the excerpts of record, pages 1012 to 1018. And in that excerpt, Your Honors, Dr. Kennedy confirmed that he was simply relying on the say-so of Curran's CEO for any attempt to show causation of harm. What we saw was that he didn't conduct a consumer survey, even though he knows that those are sometimes done in line amount cases. He's seen them done in false advertising cases, but he didn't do it. He didn't provide any customer emails, no customer declarations, no conversations with customers. He didn't even talk with Curran sales reps. He only talked with Curran's CEO. And Your Honor, as the dish report correctly found, none of that is evidence of a causal connection between any injury to Curran and the challenge statements. It's at most correlation without causation, which this court in Rexall, a 1960 case said was not enough. The fourth circuit in Verisign in 2017 said the same thing, but it's worse than that, Your Honors. These are simply conclusions built upon vague conclusory speculation. Your Honors, the lack of materiality as a matter of law, the lack of causation as a matter of law are each independent sufficient grounds to affirm the judgment on Curran's claims against Magnolia. Unless the court has any other questions about the summary judgment on Curran's claims against Magnolia, I'll just move on to briefly address one more issue raised by Curran's counsel. I do have a question. Go ahead. I'm sorry. I'm curious, if they had done a survey of your customers, who would they talk to? At what level are these representations made and who would act to purchase on the basis of them or not? Your Honor, there is a joint stipulation between the parties at page 279 of the excerpts of record volume two that said the purchasers are health care providers. And then there was also information in the expert reports about the types of medical professionals who purchase these products, as well as in the discovery. Yes, Your Honor. Are we talking about laboratories? Would those be your customers? I'm just trying to figure out. It wouldn't be a survey of all doctors, for example. I'm trying to figure out the feasibility of doing such a study in this case. Yes, Your Honor. The primary customers here would be hospitals and other facilities that directly provide medical services to customers because Steripath, which is Magnolia's product, as well as Curran's product, are used essentially in the field in order to draw blood from patients. So, the types of individuals who typically use these devices are phlebotomists and nurses. However, the people who typically purchase these devices are the professional purchasing agents of the hospitals in most cases. And those can be people who themselves may have medical degrees, may have nursing degrees, may have some medical background. But they're all sophisticated purchasers because they're responsible for making sure that the hospital not only spends its budget wisely from a fiscal perspective, but is also buying products that the purchasers can confidently supply to the hospital, saying that, yes, we think that these will be safe and effective for patients. So, these are people who not only will pay attention to the evidence, they'll actually read the clinical studies that, certainly in Magnolia's case with Steripath, the clinical studies that demonstrated the efficacy of these devices. And Curran itself is attempting to market its own product to these types of customers. We also have a very robust discovery record, five volumes of the excerpts of record that show you exactly, not just the names, but the positions of all the different individuals that Magnolia was marketing to. So, it would not be difficult at all to identify the relevant population here for a consumer survey. All right. Thank you. I had a question on the topic that your friend had spoken on at length, and I want to make sure I understand the counterclaim in this case that your client filed. That counterclaim had to do with Curran's product, right? The Curran lock. Yes, Your Honor. Representations that Curran... And it said you'd make false representations, whether under the UCL or, I'm sorry, under California law or under the Lanham Act. And you wanted the court to enter a judgment to that effect. The court denied the other side's motion for summary judgment on that saying that you should lose. And then you dismissed the claims. So, these claims are no longer outstanding. And obviously, if you don't intend to pursue them, there's been no prejudice whatsoever against the other side. Is there something in this record from which I can determine whether or not there's some future intent to pursue these claims? Your Honor, there isn't anything in this record from which the court could determine that intent. If I may, Your Honor, speak briefly about the ruling in Delaware, even though that's not specifically in the record, would the court allow that? I think we can take judicial notice of it if it's in the public record. So, just tell us what's in the public record. Thank you, Your Honor. So, in Delaware, the court denied Magnolia's motion to amend. And a major point of contention between the parties was whether the claims that Magnolia was trying to add in Delaware were the same ones that it was pursuing until it voluntarily dismissed without prejudice in California. Magnolia's position, of course, was that those were not the same. Curran's position was that they were the same. The judge in Delaware did not take an ultimate position on whether or not those were the same claims. Rather, what the Delaware judge ruled was that if I were considering this motion under Rule 15 and its liberal amendment standard, I would be inclined to grant the motion. However, I'm looking at it under Rule 16 because of the advanced stage of the proceedings. I'm not going to reach Curran's claim-splitting argument. I'm not going to decide whether these are the same or different. I'm just going to say, if Magnolia wishes to pursue them in a different forum, I'm not prohibiting Magnolia from doing that, but I'm not going to let you do it in this Delaware case. And so, one of the effects of a dismissal without prejudice in the California case is that if Magnolia were to try to assert either of these claims or what Magnolia contends are the different claims it was asserting in Delaware, a dismissal without prejudice would avoid the preclusion fight. I understand that. That's not what I was asking you. I was asking you, and I guess you probably can't answer it. Are these guys really in danger of you reviving these counterclaims? Your Honor, that is not a question that I'm in a position to answer. However, Your Honor, Curran's counsel is correct that there has been no attempt since the denial of the motion to amend in Delaware to assert these claims anywhere else. Counsel, isn't there a statute of limitations running on this? Your Honor, presumably there is. We haven't analyzed for purposes of this appeal what that statute of limitations may be, and it may vary depending on the forum in which these claims would be asserted if they ever were asserted again. But Your Honor has correctly identified the fact that, in general, the existence of a running statute of limitations will be another constraint on a party's ability to reassert claims even after they're dismissed only without prejudice, as they were here. All right. Thank you, Counsel. Mr. Penanowski. Thank you, Your Honors. Mr. Hangartner, you have some time left. Thank you. So I'd like to address what we just heard with respect to alleged failure to provide evidence with respect to materiality causation injury in Curran's own claims. So this would be the grant of summary judgment against Curran on its own claims for false advertising. And I think it's important to look at the record on these issues. Counsel indicated that there was no evidence in the record on these matters, and that is not correct. In fact, in the opening brief, page 46-47, Curran has identified some of the evidence that it presented to the district court regarding these issues. So for example, with respect to materiality, the claims made or the statements that were at issue in Curran's claims had to do with the efficacy of the Magnolia device. It's called the Steripath device. And the materiality of claims of efficacy is strongly supported in the record from statements not by Curran's CEO, but by the COO of Magnolia itself. And we note some of these statements by Mr. Bob Gerberich in the fourth excerpts of record, pages 856-857. We see statements by Magnolia's own COO emphasizing the importance of efficacy data for its customers in their decision making. And so this is highly relevant to materiality and to causation when the claims that we're talking about are specifically directed to efficacy claims by Magnolia. Magnolia was claiming that their device could eliminate blood culture contamination, reduce it by certain specific percentages, and the evidence we presented established that those were not accurate claims. I see I'm about to run out of time. I would like to mention that as a separate issue on the appealability of the denial of Curran's motion for summary judgment, there is a separate grounds, the legal error exception, and that's identified and discussed in pages 10 and 11 of our reply brief. All right. Thank you very much, counsel. Curran versus Magnolia will be submitted, and this session of the court is adjourned for today. Thank you. Thank you, counsel. This court for this session stands adjourned.
judges: WARDLAW, Parker, HURWITZ